[Civ. No. 7139. First Appellate District, Division Two.—May 21, 1930.]

MARIN UNION JUNIOR COLLEGE DISTRICT, Appellant, v. JOSEPH M. GWINN, as Superintendent of Schools, etc., Respondent.

George H. Harlan for Appellant.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Respondent.

NOURSE, P. J.—Petitioner sued in *mandamus* to require the respondent to approve a claim for the cost of educating

students in the Marin Union Junior College District who were residents of the city and county of San Francisco. Respondent's demurrer to the petition was sustained without leave to amend and petitioner appeals on the judgment-roll.

The Junior College District is organized under the act of May 27, 1921 (Stats. 1921, p. 756). During the fiscal year 1927–28 it expended for capital outlays, including the purchase of lands and the erection of buildings, the sum of $48,-448.18. The total cost of maintaining the school during that year was $105,456.21. The aid received from the state under the act amounted to $18,800. The petitioner subtracted this amount from its total expenditures and, on the basis of an average daily attendance of 168 students, estimated the average cost per student as $515.81. During the year 16 students whose residence was in the city and county of San Francisco attended the college and, upon the estimate above mentioned, the petitioner presented its claim to respondent in the sum of $8,252.96. The single question involved is whether under the act the city and county is required to pay an equal proportion of the cost of capital outlays made by the district.

Section 15 of the act of 1921 called for a special tax in the county of the student's residence "to pay the cost of educating such students" in a junior college district located in another county. The funds so raised were to be "in proportion to the total net cost . . . of educating" such students. The same section provided that such funds "shall be used to *maintain* the junior college." By the act of May 28, 1927 (Stats. 1927, p. 1278), this section was amended by striking out the word "net," so that the law provided, at the time this controversy arose, that the outside county should pay "in proportion to the total cost . . . of educating" a sum to be used for maintenance purposes. Counsel for both parties concede that the amendment of 1927 has no bearing upon the question involved which is reduced to a simple interpretation of the meaning of the expression "cost of educating" and maintenance of the school.

For years the legislature has recognized the well-established economic distinction between cost of capital expenditures and cost of maintenance. Throughout the school

law this distinction has appeared in the special provisions for taxation (or for the issue of bonds) for the purchase of school lands and erection of school buildings and in the special provisions for maintenance. It is further illustrated by the numerous statutes calling for the creation of special building funds as distinct from the general, or maintenance, funds. It is based upon the sound economic principle that a capital expenditure is in the nature of an investment for the future, whereas the cost of maintenance is a definite present expense.

We can reach no other conclusion than that the legislature had this distinction in mind when it provided that the funds raised under section 15 of the act were to be used for maintenance and that the ''cost of educating'' the students did not include the *cost* of capital expenditures. It is altogether possible that a reasonable charge in the nature of rental for the use of the buildings and equipment might have properly been included as a charge upon the cost of maintenance (as indicated by section 12 of the act), but the petitioner does not make the claim and we do not need to decide it. The legislature no doubt had this factor in mind when, by the act of 1929 (Stats. 1929, p. 985; School Code 1929, p. 343), it provided: ''The said total cost shall not include outlays for permanent construction or improvements, nor moneys received from state apportionment, but shall include sixty-five dollars per unit of average daily attendance for the use of buildings and equipment.'' The petitioner insists that we may not rely on this amendment because it was enacted after the claim in controversy accrued. We do not cite it as determinative of the question involved, but merely as illustrative of the legislative recognition of the well-recognized principle above noted.

Judgment affirmed.

Sturtevant, J., and Spence, J., concurred.