BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE MANNY DIAZ, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a school district use Proposition 39 school bond proceeds to pay the salaries of district employees who perform administrative oversight work on construction projects authorized by a voter approved bond measure?
 CONCLUSION
A school district may use Proposition 39 school bond proceeds to pay the salaries of district employees to the extent they perform administrative oversight work on construction projects authorized by a voter approved bond measure.
 ANALYSIS
On November 8, 2000, California voters approved Proposition 39, which amended the Constitution to allow the issuance of bonds for the construction of school facilities if approved by 55 percent of a school district's voters and if specified conditions are met.[1] Among other things, subdivision (b)(3) was added to section 1 of article XIIIA of the Constitution, providing that the one percent property tax limitation does not apply to:
 "Bonded indebtedness incurred by a school district, community college district, or county office of education for the construction, reconstruction, rehabilitation, or replacement of school facilities, including the furnishing and equipping of school facilities, or the acquisition or lease of real property for school facilities, approved by 55 percent of the voters of the district or county, as appropriate, voting on the proposition on or after the effective date of the measure adding this paragraph. This paragraph shall apply only if the proposition approved by the voters and resulting in the bonded indebtedness includes all of the following accountability requirements:
 "(A) A requirement that the proceeds from the sale of the bonds be used only for the purposes specified in Article XIIIA, Section 1(b)(3), and not for any other purpose, including teacher and administrator salaries and other school operating expenses.
 "(B) A list of the specific school facilities projects to be funded and certification that the school district board, community college board, or county office of education has evaluated safety, class size reduction, and information technology needs in developing that list.
 "(C) A requirement that the school district board, community college board, or county office of education conduct an annual, independent performance audit to ensure that the funds have been expended only on the specific projects listed.
 "(D) A requirement that the school district board, community college board, or county office of education conduct an annual, independent financial audit of the proceeds from the sale of the bonds until all of those proceeds have been expended for the school facilities projects." (Italics added.)
We are asked to determine whether the prohibition against using Proposition 39 school bond proceeds for "teacher and administrator salaries and other school operating expenses" (Cal. Const., art. XIIIA, § 1, subd. (b)(3)(A)) applies to the payment of salaries of school district employees who perform administrative oversight work on construction projects authorized by a voter approved bond measure. We conclude that the prohibition is inapplicable to such salary expenses.
Preliminarily, we note that Proposition 39 also amended section 18 of article XVI of the Constitution in several respects, including the addition of subdivision (b), as follows:
 ". . . [O]n or after the effective date of the measure adding this subdivision, in the case of any school district, community college district, or county office of education, any proposition for the incurrence of indebtedness in the form of general obligation bonds for the construction, reconstruction, rehabilitation, or replacement of school facilities, including the furnishing and equipping of school facilities, or the acquisition or lease of real property for school facilities, shall be adopted upon the approval of 55 percent of the voters of the district or county, as appropriate, voting on the proposition at an election. This subdivision shall apply only to a proposition for the incurrence of indebtedness in the form of general obligation bonds for the purposes specified in this subdivision if the proposition meets all of the accountability requirements of paragraph (3) of subdivision (b) of Section 1 of Article XIIIA."
In addition, to implement the provisions of Proposition 39, the Legislature has enacted "The Strict Accountability in Local School Construction Bonds Act of 2000" (Ed. Code, §§ 15264-15288; "Act"),[2] targeting "unauthorized expenditures" of Proposition 39 school bond proceeds. Section 15264 thus provides:
 "It is the intent of the Legislature that all of the following are realized:
 "(a) Vigorous efforts are undertaken to ensure that the expenditure of bond measures, including those authorized pursuant to paragraph (3) of subdivision (b) of Section 1 of Article XIIIA of the California Constitution, are in strict conformity with the law.
 "(b) Taxpayers directly participate in the oversight of bond expenditures.
 "(c) The members of the oversight committees appointed pursuant to this chapter promptly alert the public to any waste or improper expenditure of school construction bond money.
 "(d) That unauthorized expenditures of school construction bond revenues are vigorously investigated, prosecuted, and that the courts act swiftly to restrain any improper expenditures."
Section 15278 requires the establishment of a citizens' oversight committee with the following duties:
 "The purpose of the citizens' oversight committee shall be to inform the public concerning the expenditure of bond revenues. The citizens' oversight committee shall actively review and report on the proper expenditure of taxpayers' money for school construction. The citizens' oversight committee shall advise the public as to whether a school district or community college district is in compliance with the requirements of paragraph (3) of subdivision (b) of Section 1 of Article XIIIA of the California Constitution. The citizens' oversight committee shall convene to provide oversight for, but not be limited to, both of the following:
 "(1) Ensuring that bond revenues are expended only for the purposes described in paragraph (3) of subdivision (b) of Section 1 of Article XIIIA of the California Constitution.
 "(2) Ensuring that, as prohibited by subparagraph (A) of paragraph (3) of subdivision (b) of Section 1 of Article XIIIA of the California Constitution, no funds are used for any teacher or administrative salaries or other school operating expenses." (§ 15278, subd. (b).)
Oversight committees are expressly permitted to engage in a number of review and inspection activities, including review of school districts' efforts "to maximize bond revenues by implementing cost-saving measures," specifically including "[m]echanisms designed to reduce the costs of professional fees." (§ 15278, subd. (c)(5)(A).)
Finally, section 15284 provides for the filing of expedited civil actions, known as "School Bond Waste Prevention Actions," by persons residing in the school district when, among other things, it appears that bond proceeds are being spent "for purposes other than those specified in paragraph (3) of subdivision (b) of Section 1 of Article XIIIA of the California Constitution." (§ 15284, subd. (a)(1).)
With these constitutional and statutory provisions in mind, we return to the language of section 1, subdivision (b)(3)(A), of article XIIIA of the Constitution. School bond proceeds may be expended only for "the construction, reconstruction, rehabilitation, or replacement of school facilities" and not "for any other purpose, including teacher and administrator salaries and other school operating expenses." In which of these categories are the salaries of district employees whose work involves oversight of the construction projects authorized by a voter approved bond measure?
We believe that the phrase "the construction, reconstruction, rehabilitation, or replacement of school facilities" embraces project administrative costs, such as monitoring contracts and project funding, overseeing construction progress, and performing overall project management and accounting that facilitates timely completion of the construction project. A construction project generates not only the costs of materials and equipment, architectural and engineering design work, and construction worker salaries, but also costs of project administration — work that the school district would not be required to undertake or to fund but for the existence of the construction project. This administrative work is performed, whether by private consultants under contract with the school district or by school district employees with expertise in project management, to ensure that all aspects of the construction project are properly coordinated; that each step satisfies the specifications; that invoices are reviewed, revised where appropriate, and paid in a timely manner; that costs do not exceed the project's budget; and that the project is completed on schedule. (See 78 Ops.Cal.Atty.Gen. 48 (1995).)[3]
Some of these administrative tasks — specifically, conducting an annual independent performance audit and an annual independent financial audit during the life of the construction project — are expressly required by Proposition 39 itself, as a condition of qualifying for the 55 percent voter approval requirement. (See Cal. Const., art. XIIIA, § 1, subds. (b)(3)(C), (b)(3)(D).) We view these kinds of project administration costs, because they relate directly to the bond projects and are an integral part of the construction process, as coming within "the purposes specified in Article XIIIA, Section 1(b)(3)." (Cal. Const., art. XIIIA, § 1, subd. (b)(3)(A); see § 15278, subd. (b).)[4]
Such project management costs may therefore be funded by Proposition 39 school bond proceeds unless the expenditures are specifically prohibited under the phrase "teacher and administrator salaries and other school operating expenses." The "teacher and administrator salaries" in question are limited to those that qualify as "school operating expenses" because of the word "other" contained in the phrase.[5] We believe that "school operating expenses" are those regular, ongoing, day-to-day costs associated with maintaining and operating a school. Among such expenses would be (1) the cost of managing the educational services provided, including the salaries of school administrators, and (2) the cost of providing instruction to students, including the salaries of teachers. (See 22 Ops.Cal.Atty.Gen. 105, 108 (1953) [school district's normal operating expenses include purchase of supplies and payment of salaries of school administrators, teachers, and janitors].)[6]
We distinguish between routine, everyday school operating expenses and the narrow category of costs and salaries of concern here — costs that arise only in connection with, and are incurred only for the duration of, construction projects authorized by a voter approved school bond measure. The latter expenses are not incurred in the school's ordinary ongoing operation, but are instead an integral part of the construction process and "in the nature of an investment for the future." As the court explained in Marin U. Junior College Dist. v. Gwinn (1930) 106 Cal.App. 12:
 "For years the legislature has recognized the well-established economic distinction between cost of capital expenditures and cost of maintenance. Throughout the school law this distinction has appeared in the special provisions for taxation (or for the issue of bonds) for the purchase of school lands and erection of school buildings and in the special provisions for maintenance. It is further illustrated by the numerous statutes calling for the creation of special building funds as distinct from the general, or maintenance, funds. It is based upon the sound economic principle that a capital expenditure is in the nature of an investment for the future, whereas the cost of maintenance is a definite present expense." (Id. at pp. 13-14.)
Accordingly, we believe that Proposition 39's prohibition against the use of school bond proceeds for "school operating expenses" does not bar use of the proceeds for the payment of salaries of school district employees performing oversight work on construction projects authorized by a voter approved bond measure.
Our interpretation of the language of Proposition 39 allows school districts, where feasible, to implement "cost-saving measures" and "reduce the costs of professional fees" on voter approved construction projects — objectives promoted by the Legislature in implementing Proposition 39. (See § 15278, subd. (c)(5)(A).) School district employees with the requisite expertise may be able to perform project management work at less cost to the district than if the work were performed by private consultants.
It is also consistent with other legislative schemes dealing with similar types of costs. (See, e.g., Gov. Code, § 16727, subd. (a) ["costs of construction or acquisition of capital assets" for which bond proceeds may be expended "include costs incidentally but directly related to construction or acquisition"]; Pub. Resources Code, § 5096.674 [bond proceeds for site acquisition and development of parks and recreation areas may be applied to "costs incurred in connection with administering" bond programs]; Wat. Code, § 13959, subd. (f) [defining "construction" of bond-funded water treatment facilities to include "legal, fiscal, or economic investigations or studies, surveys, designs, plans, . . . or the inspection or supervision of any of the foregoing items"].) Administrative oversight work is an integral part of the construction process.
Finally, we note that a contrary conclusion would permit the use of the school bond proceeds for administrative oversight work if performed by private consultants under contract with a school district while forbidding the use of such proceeds for the same work performed, presumably at lower cost, by district employees. Nothing in the November 8, 2000 ballot pamphlet remotely suggests that California voters intended such a result when they adopted Proposition 39.
We conclude that a school district may use Proposition 39 school bond proceeds to pay the salaries of district employees to the extent they perform administrative oversight work on construction projects authorized by a voter approved bond measure.
[1] Normally, approval of a school district's bonded indebtedness would require a two-thirds approval vote of a district's voters. (See Cal. Const., art. XIIIA, § 1, subd. (b)(2), art. XVI, § 18, subd. (a).)
[2] All references hereafter to the Education Code are by section number only.
[3] We distinguish these "management costs" from actual construction labor that district employees might contribute to the project — such as electrical work, carpentry, painting, or plumbing. The use of district employees for construction labor is subject to separate legal restrictions. (See, e.g., Pub. Contract Code, § 20114; cf. Pub. Contract Code, § 22032.) However, the question posed here concerns only those administrative duties required for oversight of the construction project.
[4] To the extent the management services consist of onsite assessment of technical matters involving, for example, design, materials, building standards, or workmanship, a project manager may be required to be licensed and have experience in the particular subject area. (Cf. Gov. Code, §§ 4525-4529.5; 78 Ops.Cal.Atty.Gen. 48, supra; 57 Ops.Cal.Atty.Gen. 421 (1974).)
[5] In interpreting the constitutional language added by Proposition 39, "our paramount task is to ascertain the intent of those who enacted it. [Citation.]" (Thompson v. Department of Corrections (2001) 25 Cal.4th 117, 122.) In determining that intent, we "look first to the language of the constitutional text, giving the words their ordinary meaning." (Leone v. Medical Board (2000) 22 Cal.4th 660, 665.) " `A constitutional amendment should be construed in accordance with the natural and ordinary meaning of its words. [Citation.]' " (Hi-Voltage Wire Works, Inc. v. City of San Jose (2000) 24 Cal.4th 537, 559.)
[6] We read Proposition 39's use of the term "teacher . . . salaries" as meaning salaries for teaching, thus corresponding with "salaries of classroom teachers" as defined for school accounting purposes in section 41011. Appropriate definitions of "teacher" and "administrative employee" are contained in section 41401.